UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOYCE JOHNSON,

                            Plaintiff,

  -against-                                          **MEMORANDUM AND ORDER**
                                                                            05 CV 2740 (JMA)

R. JAMES NICHOLSON, Secretary,
Department of Veterans Affairs,

                            Defendant.
----------------------------------------------------------------X

A P P E A R A N C E S:

Michael Resko, Esq.
420 Lexington Ave, Suite 628
New York, NY 10170
*Attorney for Plaintiff*

Catherine M. Mirabile
Assistant U.S. Attorney
One Pierrepont Plaza, 14th floor
Brooklyn, New York 11201
*Attorney for Defendant*

**AZRACK, United States Magistrate Judge:**

      Plaintiff Joyce Johnson brings this action against her employer, defendant James R. Nicholson, Secretary of the Department of Veteran Affairs, alleging that defendant discriminated against her on the basis of her race and retaliated against her based on her participation in protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Plaintiff does not oppose defendant's motion for summary judgment as it applies to her substantive discrimination claims; thus only her retaliation claim remains.

1

By motion dated September 14, 2006, defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties consented to me presiding over this motion pursuant to 28 U.S.C. § 636(c). Viewing the evidence in the light most favorable to plaintiff, and for the reasons set forth below, I find that there are no material facts in dispute such that a reasonable jury could conclude that plaintiff was the subject of unlawful retaliation. Accordingly, summary judgment is granted to defendant.

**I. FACTS**

The following facts are taken from defendant's Statement of Undisputed Material Facts pursuant to Local Rule 56.1 ("Def.'s 56.1 Statement"). Plaintiff has not submitted a Local Rule 56.1 Counter-Statement, and thus defendant's 56.1 Statement will be accepted as the undisputed facts in this case. See Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (finding that because plaintiff failed to respond with a Rule 56.1 Counter-Statement, defendant's 56.1 Statement is deemed admitted as a matter of law.) Because this is defendant's motion, the facts will be viewed in the light most favorable to the plaintiff.

Plaintiff Joyce Johnson, an African-American woman, is currently a Special Projects Manager at the Brooklyn Veterans Affairs Medical Center ("Medical Center") in Brooklyn, New York. (Def.'s 56.1 Statement ¶¶ 1, 2.) From 1993 until the present, plaintiff has been employed at the Medical Center as an Associate Chief Nurse, an Acting Chief Nurse, an Associate Chief Nurse of Special Care Units, and finally, as a Special Projects Manager. (Def.'s 56.1 Statement ¶¶ 3-7.)

Plaintiff claims that she was retaliated against for filing protected Equal Employment Opportunity ("EEO") complaints and a prior federal lawsuit. She alleges the following protected acts: (1) a formal EEO complaint filed July 23, 1998 alleging racial discrimination; (2) a federal

2

lawsuit filed July 1999, alleging employment discrimination, see Johnson v. West, No. 99-CV-4339 (ILG) (JMA); (3) an informal EEO complaint filed April 20, 2000 and a formal EEO complaint filed July 20, 2000, regarding her non-selection for a Care Line Manager position; (4) an informal EEO complaint filed July 12, 2000 and a formal EEO complaint filed September 10, 2000 regarding defendant's denial of funding for plaintiff to attend a Blacks In Government ("BIG") conference; and (5) an informal EEO complaint filed August 14, 2000 and a formal EEO complaint filed October 12, 2000 regarding defendant's issuance of written counseling memoranda to the plaintiff. (Def.'s 56.1 Statement ¶¶ 111-12, 116, 118-19, 123-24.) The following facts pertain to the employment actions giving rise to plaintiff's claims.

In the late 1990s, the New York Veterans Affairs Medical Center and the Brooklyn Veterans Affairs Medical Center merged to become the New York Harbor Healthcare System. (Id. ¶ 12.) Due to the integration, the Chief Nurses, including plaintiff, had to reapply for their jobs, and the Associate Chief Nurse position was reclassified as a Care Line Manager position. (Id. ¶¶ 13, 15.) In April 2000, the Veterans Affairs office issued a vacancy announcement for three Care Line Manager positions: (1) a surgical care line manager for the Brooklyn campus; (2) a medical care line manager for the Brooklyn Campus; and (3) a mental health care line manager for the whole New York Harbor Healthcare System. (Id. ¶¶ 16, 17.) Plaintiff applied for these three positions. (Id. ¶ 23.)

In applying for the positions, plaintiff completed an application, submitted a resume, and was interviewed by a panel. (Id. ¶ 24.) All qualified applicants, including plaintiff, were interviewed by a panel with identical panel members, made up of a cross section of employees from various departments within the New York Harbor Healthcare System. (Id. ¶¶ 32-34.) The process used to

3

select the Care Line Managers was the "High Performance Development" model, in which the interviewers identified eight "core competencies" to address the skills required for the position. (Id. ¶¶ 27, 28.) In addition to plaintiff, employees Karen Biancolillo, Sheila Britton, Rose Browne, Marianne Lynch, Karel Raneri-Vitale, Joann Roberts, Susan Sodden, Laura Vigliarolo, Aurita Waterman, and Alan Winkler applied for the positions. (Id. ¶ 38.) Of the candidates, plaintiff, Aurita Waterman and Sheila Briton are African-American; the remaining are white. (Id. ¶¶ 39, 40.)

At the end of the interviews, plaintiff was ranked seventh out of eleven candidates. (Id. ¶ 44.) Rose Browne was selected for the Medical Care Line Manager position, Sheila Britton for the Surgical Care Line Manager position, and Karel Raneri-Vitale for the Mental Health Care Line Manager position. (Id. ¶ 46.) Defendant claims that Browne was selected for the Medical Care Line Manager position and Britton was selected for the Surgical Care Line Manager position because they were both qualified for the May 11, 2007 positions and they outranked the other candidates, including plaintiff. (Id. ¶¶ 47, 49.) Defendant similarly asserts that Rainier-Vitale was selected for the Mental Health Care Line Manager position because she had a psychiatric mental health background and she outranked all other candidates, including plaintiff. (Id. ¶ 48.) Plaintiff argues that she was more qualified than any of the candidates who applied for the positions, except for Alan Winkler, whom plaintiff does not know. (Id. ¶ 53.) She also claims that Sheila Britton, who is African-American, was only given the position in order to undermine plaintiff's EEO claims. (Id. ¶ 58.)

In July 2000, after not being chosen for any of these positions, plaintiff applied for funding to attend a Blacks in Government ("BIG") conference being held in August 2000. (Id. ¶¶ 66, 74.) The funding to attend this type of program was given by the Medical Center's education committee,

4

which met every other Monday. (Id. ¶ 69.) In July 2000, the committee met on three Mondays: July 3, 10 and 24. (Id. ¶ 70.) On July 3, five employees were approved for $1,500 in travel and $1,500 in tuition to attend the BIG conference. (Id. ¶ 71.) Plaintiff, however, applied for funding on July 13 and her request was discussed at the July 24 meeting of the education committee. (Id. ¶¶ 79, 80.) Defendant claims that plaintiff's request for funding was denied because "five other employees had already been approved and monies were low." (Id. ¶ 81.) Defendant also notes that two other employees were denied funding at the same time as plaintiff. (Id. ¶ 82.) Later, an employee who was originally granted funding decided not to attend, so as per "standard practice," the funds allocated for her were divided among the four employees previously approved for funding. (Id. ¶ 93.) Plaintiff contends that by dividing this money among the four employees and not granting her funding, defendant retaliated against her for protected activity. (Id. ¶ 92.)

Subsequently on August 2, 2000, plaintiff received written counseling regarding her use of sick leave. (Id. ¶ 97.) This written counseling memorandum was issued because between January and August 2000, plaintiff used most, if not all, of her accumulated sick leave. (Id. ¶ 96.) Defendant claims that plaintiff's "absenteeism cause[d] management not to be able to plan work properly, and put[] an undue burden on [plaintiff's] fellow employees." (Id. ¶ 98.) Plaintiff was not, however, required to submit medical proof of her absences, and the letter was not placed in plaintiff's personnel folder. (Id. ¶¶ 99, 100.)

On August 7, 2000, plaintiff again received written counseling for being absent without leave during her shift on July 27, 2000. (Id. ¶¶ 104, 107.) On July 27, Elvira Miller, plaintiff's immediate supervisor, paged plaintiff three times between 3:30 and 4:00 pm and plaintiff failed to respond to these pages. (Id. ¶ 105.) Plaintiff, however, cannot remember where she was during this time. (Id.

5

¶ 106.) This written counseling letter was also not placed in plaintiff's personnel folder, and no corresponding disciplinary action was taken. (Id. ¶¶ 108, 109.)

## II. DISCUSSION

### A. Summary Judgment Standard

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); Anderson v. Liberty Lobby, Inc., 477 U.S. at 248 (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Yet, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). It is not enough for the party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir.1996) (internal quotations omitted).

There are special dangers in evaluating summary judgment motions in connection with claims of discrimination. "Because direct evidence of . . . discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed,

would show discrimination.'" Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Gallo v. Prudential Residential Services, L.P., 22 F.3d 1219, 1224 (2d Cir. 1994)). "However, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." Id. (citing Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)). Summary judgment continues to "remain[] available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." Pender v. State of New York Office of Mental Retardation and Developmental Disabilities, No. 02-CV-2438, 2006 WL 2013863, at *3-4 (E.D.N.Y. July 18, 2006) (citing McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.")). It is with these standards in mind that I address defendant's motion.

**B. Retaliation Claims**

Plaintiff asserts a claim of discriminatory retaliation in violation of Title VII. Although plaintiff does not oppose defendant's motion for summary judgment as it applies to her substantive discrimination claims, her claims for retaliation survive because "a successful discrimination claim is not a predicate for a retaliation claim." Melendez v. Monroe College, No. 04-CV-2266, 2006 WL 2882568, at *8 (E.D.N.Y. Oct. 6, 2006) (citations omitted). Thus, plaintiff can "still state a claim for retaliation if [s]he took action to protest practices [s]he reasonably believed to be discriminatory." Myers v. New York City Human Rights Comm'n, No. 04-CV-543, 2006 WL 344754, at *9 (S.D.N.Y. Feb. 15, 2006) (citing Keating v. Gaffney, 182 F. Supp. 2d 278, 288 (E.D.N.Y. 2001)).

Title VII prohibits employers from retaliating against employees because those individuals

opposed potentially discriminatory practices of the employer. 42 U.S.C. § 2000e-3(a). Under Title VII, a plaintiff alleging retaliation must establish: (1) participation in a protected activity known to the defendant; (2) that the employer took adverse action against the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action, i.e., that a retaliatory motive played a part in the adverse employment action. Kessler v. Westchester County Dep't. of Social Services, 461 F.3d 199, 206 (2d Cir. 2006) (citations omitted).

Retaliation claims are examined under the burden-shifting analysis established by the Supreme Court in the McDonnell Douglas case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under this analysis, the plaintiff bears the initial burden of establishing her prima facie case. McDonnell Douglas, 411 U.S. at 802. However, a plaintiff's burden in presenting prima facie evidence is de minimis. Abdu-Brisson v. Delta Airlines, 239 F.3d 456, 467 (2d Cir. 2001). Once the plaintiff has satisfied this burden, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory basis for the action. McDonnell Douglas, 411 U.S. at 802. If such a showing is made, the burden shifts back to plaintiff to prove that the proffered reason is merely a pretext for unlawful discrimination. Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006).

With regard to the first prong of a prima facie case, "protected activity" under Title VII refers to any action taken to oppose statutorily prohibited discrimination. See 42 U.S.C. § 2000e-3. In the instant case, defendant does not dispute that plaintiff engaged in a protected activity by filing her formal and informal EEO complaints and a federal action alleging racial discrimination. Plaintiff and defendant disagree, however, as to whether the actions that defendant took were adverse, and whether there is a causal connection between plaintiff's protected activity and these adverse actions.

### i. Adverse Acts and Causal Connection

To establish the second element of her prima facie retaliation claim, plaintiff alleges that, following the filing of her several EEO complaints and her federal lawsuit, adverse action was taken by her employer when she was (1) not hired for a Care Line Manager position; (2) denied funding to attend the BIG conference; and (3) given written counseling memoranda regarding her use of sick leave and her absenteeism. Plaintiff contends she was subject to "a loss of income, including past or future salary, pension benefits, and other employer sponsored benefits." (Compl. ¶ 17.) She also claims she suffered "mental anguish, humiliation and degradation" and "physical problems and a general worsening of her physical health and well-being." (Compl. ¶ 18.) Defendant contends that these acts do not qualify as adverse employment actions because "no reasonable employee would have found that the denial of funding to attend the BIG conference and the August 2000 written memorandums [sic] (that did not lead to any disciplinary action) [were] materially adverse." (Def.'s Mem. 29.)

In evaluating whether these employment actions were adverse, I look to Burlington Northern v. White, in which the Supreme Court promulgated a new standard for determining the existence of an adverse employment action in a retaliation claim. Burlington Northern & Santa Fe Ry. v. White, – U.S. –, 126 S. Ct. 2405, 2415 (2006)). In Burlington Northern, the Supreme Court broadened the standard so that for purposes of a retaliation claim, an adverse employment action is one which "a reasonable employee would have found [to be] materially adverse" and which would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 126 S. Ct. at 2415; see also Kessler, 461 F.3d at 207-08 (recognizing new standard). The Court found that such actions need not affect the terms and conditions of employment. Burlington

Northern, 126 S. Ct. at 2412-13; Messer v. Board of Educ. of City of New York, No. 01-CV-6129, 2007 WL 136027, at *13 (E.D.N.Y. Jan. 16, 2007). The Court also noted that the anti-retaliation provision under Title VII prohibited a broader range of conduct than what is prohibited by the anti-discrimination provision. Burlington Northern, 126 S. Ct. at 2414.

Adhering to the broader standard of Burlington Northern and keeping in mind that plaintiff's burden in establishing her prima facie case is de minimus, I am convinced that plaintiff has satisfied her burden. The denial of a promotion, including the loss of accompanying salary and benefits, could be materially adverse to a reasonable employee. See Kessler, 461 F.3d at 209-10. Courts have also found that negative evaluation letters are materially adverse actions. Nugent v. St. Luke's/Roosevelt Hosp. Center, No. 05-CV-5109, 2007 WL 1149979, at *10 (S.D.N.Y. Apr. 18, 2007) (citing Little v. NBC, 210 F. Supp. 2d 330, 387 (S.D.N.Y. 2002)). If these employment acts plus the denial of funding for the BIG conference were, as argued, based on retaliation for protected activity, a reasonable jury could find that it would deter an employee from reporting illegal discrimination.

With regard to the third prong of plaintiff's prima facie case, defendant argues that plaintiff cannot establish a causal connection between her protected activity and the three allegedly retaliatory employment actions. Defendant sees plaintiff's last protected activity as occurring in July 1998, almost two years before defendant's three adverse employment actions. (Def.'s Mem. 28.) This protected activity, defendant contends, is too far in temporal proximity to the employment actions to satisfy causality. (Id.) (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (holding that the temporal proximity must be "very close.")). In opposition, plaintiff emphasizes that the federal employment discrimination lawsuit she filed against defendant in July

1999 was ongoing from that date through May 2006. Furthermore, plaintiff notes that she was engaged in continuous protected activity, filing complaints on three occasions in 2000. Thus, plaintiff contends, the contested employment actions happened simultaneously with protected activity.

Courts have found that proof of causation between the protected activity and the retaliation can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Gordon v. New York City Bd. Of Educ., 232 F.3d 111, 117 (2d Cir. 2000), citing Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993).

In this case, plaintiff has alleged that her protected activity was followed closely by discriminatory treatment. If a plaintiff is relying on temporal proximity alone, the temporal relationship between the protected activity and the adverse action must be very close. Clark County Schl. Dist., 532 U.S. at 273 . The Second Circuit has not yet established a bright line rule for determining when retaliatory conduct is said to have "followed closely" behind a plaintiff's protected activity. See Gorman-Bakos v. Cornell Cooperative Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001). As defendant has noted, many courts find that the temporal proximity between a plaintiff's protected activity and the adverse employment action must be close in time. (Def.'s Mem. 27) (citing Clark County Sch. Dist., 532 U.S. at 273; Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990); Nicastro v. Runyan, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999); Stringfellow v. Wycoff Heights Med. Ctr., No. 95-CV-3041, 1998 U.S. Dist. LEXIS 16346, at *17 (E.D.N.Y. Sept. 9, 1998); Padob v. Entex Information Serv., 960 F. Supp. 806,

11

814 (S.D.N.Y. 1997); Fitch v. R.J. Reynolds Tobacco Co., 675 F. Supp. 133, 138 (S.D.N.Y. 1987).

I do not, however, find defendant's authority determinative or persuasive. Unlike the above cases, plaintiff's protected activity was, as plaintiff alleges, continuous and ongoing for several years. For this reason, defendant's adverse employment actions could have taken place simultaneously to any one of plaintiff's protected EEO complaints or the ongoing activity in her federal lawsuit. A reasonable jury could find that the actions were temporally related to these complaints. Therefore, for the purposes of establishing a prima facie case, where the burden is minimal, I find that the plaintiff has satisfied her burden in establishing causation.

Although plaintiff establishes her prima facie case, the true issue is whether retaliatory animus played a role in these employment decisions. To determine this, I will examine defendant's offered justification for the actions.

## ii. Defendant's Legitimate, Nondiscriminatory Reason for the Challenged Action

Once a plaintiff has made out her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory basis for the alleged retaliatory acts. See Feingold v. New York, 366 F.3d 138, 157 (2d Cir. 2004). "Defendant's burden is satisfied if the proffered evidence taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." Ricci v. DeStefano, No. 04-CV-1109, 2006 WL 2828419, at *9 (D. Conn. Sept. 28, 2006) (quoting Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000)). This burden of production is not very demanding. See Bickerstaff v. Vassar College, 196 F.3d 435, 446 (2d Cir. 1999). In this case, defendant offers legitimate, non-discriminatory bases for the three employment actions plaintiff deems retaliatory.

Defendant contends that plaintiff was not selected for a Care Line Manager position because

she "was not the most qualified" for the jobs. (Def.'s Mem. 30.) Defendant notes that plaintiff was interviewed by a panel that included a cross-section of employees from various departments on all of the campuses within the New York Harbor Healthcare System. (Id.) After the panelists' assessments, plaintiff scored seventh out of eleven candidates. (Id.) The candidates that were chosen ranked one, two and four out of all candidates. (Id.) Based on the fact that plaintiff was independently evaluated by a diverse group of interviewees and was ranked far below the chosen candidates for the positions, I am convinced that defendant has satisfied its burden to provide a legitimate, non-retaliatory reason for not selecting plaintiff.

Moreover, defendant asserts that plaintiff's request for funding to attend the BIG conference was denied because "she did not timely submit her request for funding and money had run low." (Id. at 31.) Plaintiff was not singled out for the denial of funding, as two other employees' requests were also denied. (Id.) Furthermore, defendant claims that if one individual who had been approved for funding ultimately declined the monies, it is "standard practice" for these funds to be divided among those previously approved for funding. (Id. at 32.) These explanations are clearly legitimate, non-retaliatory reasons for denying plaintiff's funding request.

Lastly, defendant claims that the counseling memoranda issued to plaintiff were warranted because of her errant behavior. Regarding the sick leave counseling memorandum, it is undisputed that plaintiff had been "excessively absent from work on sick leave" from January to August 2000, which defendant claims was a burden on management and her fellow employees. (Def.'s Mem. 32.) Furthermore, the counseling letter regarding her absence without leave during a shift was merited because she did not respond to her supervisor's pages and cannot account for her absence during her shift. (Id.) Neither of these counseling memoranda were placed on record in the plaintiff's file.

13

(Def.'s 56.1 Statement ¶¶ 100, 108.) Plaintiff has not offered any evidence to suggest that these reprimands were unwarranted or fabricated, or that she was singled out for these negative evaluations.

In sum, I am satisfied that defendant has put forth a legitimate reason for each of the challenged employment actions. Thus, under McDonald Douglas, the burden shifts back to plaintiff to establish that these explanations are simply pretext for a retaliatory motive.

### iii. Pretext

Once a defendant has met the burden of articulating a legitimate, non-retaliatory reason for the challenged employment decision, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Treglia v. Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002). To do this, plaintiff is "obliged to produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [retaliation for complaints of discrimination] was the real reason for the discharge.'" Melendez v. Monroe College, No. 04-CV-2266, 2006 WL 2882568, at *9 (E.D.N.Y. Oct. 6, 2006) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996)).

In this case, plaintiff has failed to put forth any evidence that would satisfy her burden of proof and permit an inference of pretext. First, in arguing that defendant's legitimate reasons are pretext, plaintiff focuses only on her non-selection for the Care Line Manager positions. (See Pl.'s Mem. 4-6.) Thus, plaintiff not only fails to offer "sufficient evidence" of pretext, see Melendez, 2006 WL 2882568, at *9, but offers no evidence that defendant's explanations for the funding and

14

counseling memoranda decisions are merely pretext. For this reason, plaintiff has failed to satisfy her burden, and her retaliation claims based on the funding and counseling memoranda actions are dismissed.

The only argument that plaintiff puts forth for pretext concerns the Care Line Manager position. Plaintiff asserts that there "is a genuine issue of material fact as to the truth and accuracy of defendant's stated reason for plaintiff's non-selection" to the positions. Plaintiff's argument rests on the deposition of Aurita Waterman, taken for plaintiff's 1999 federal discrimination action. (Pl.'s Mem. 4.) Waterman's testimony refers to a conversation she had with Elvira Miller, the official responsible for the selection of the Care Line Manager positions, regarding the selection process. (Id. at 4-5.) Waterman claims that Dr. Miller told her that Rose Browne was not the most qualified for the position, but was chosen for her "potential." (Id. at 5.) This, plaintiff contends, contradicts defendant's stated non-discriminatory reason for plaintiff's non-selection (that plaintiff was not as qualified as the other candidates,) and therefore infers that the stated reason is pretextual. (See Pl.'s Mem. 5) (citing Henry v. Daytop Village, Inc., 42 F.3d 89, 96 (2d Cir. 1994) (stating that a finding of discriminatory intent may be grounded in disbelief of an employer's reason for the employment action.))

There are two reasons plaintiff's evidence is not sufficient to raise a genuine issue of material fact as to pretext. First, plaintiff's proffered evidence of Waterman's conversation with Dr. Miller is merely hearsay, and is not enough to support a retaliation claim. See Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (finding that affidavit's hearsay assertion is insufficient to create a genuine issue for trial). Second, even if Dr. Miller's statement was verified, it does not raise an issue of material fact that plaintiff's non-selection was based on retaliatory motives. Dr.

15

Miller's decision to hire the selected candidates relied on the scores of an independent and diverse interview panel, which ranked the selected candidates well above plaintiff, who ranked seventh. (Def.'s 56.1 Statement ¶¶ 33, 44.) Plaintiff does not put forth any evidence that the selection process was flawed or biased against her. This opinion testimony is simply not sufficient for a reasonable jury to find that the reason for plaintiff's non-selection was "more likely than not" retaliatory. See Melendez, 2006 WL 2882568, at * 9. Plaintiff has therefore not met her burden of demonstrating that defendant's offered reasons for the adverse employment actions were mere pretext. In sum, because plaintiff has failed to create a genuine issue of material fact on her retaliation claim, summary judgment is granted.

### III. CONCLUSION

For the above stated reasons, defendant's motion for summary judgment is hereby granted.

Dated: May 11, 2007
       Brooklyn, New York

JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE